EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

BEVERLY WEE SAMESHIMA #2556
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:  Beverly.Sameshima@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00071 JMS |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S OPPOSITION TO |
| | ) | DEFENDANT ZASHA BOTELHO'S |
| vs. | ) | MOTION TO WITHDRAW GUILTY PLEA; |
| | ) | DECLARATION OF BEVERLY WEE |
| ZASHA BOTELHO, | ) | SAMESHIMA; EXHIBITS "A" AND |
| | ) | "B"; CERTIFICATE OF SERVICE |
| Defendant. | ) | |
| | ) | Date:   May 15, 2006 |
| | ) | Time:   1:30 p.m. |
| | ) | Judge:  J. Michael Seabright |

GOVERNMENT'S OPPOSITION TO DEFENDANT ZASHA BOTELHO'S
MOTION TO WITHDRAW GUILTY PLEA

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . i-ii

I.  Summary of the Case . . . . . . . . . . . . . . . . . 1

    A.  Botelho's Guilty Plea . . . . . . . . . . . . . 7

II. Defendant Has Failed to Demonstrate a "Fair and Just"
    Reason to Withdraw Her Guilty Plea . . . . . . . . . . 8

    A.  Standard for Withdrawing Guilty Plea  . . . . . . . 8

    B.  Length of Delay Between Plea and Motion . . . . . 16

    C.  No Colorable Claim of Innocence . . . . . . . . 17

TABLE OF AUTHORITIES

Cases                                                    Page(s)

Blackledge v. Allison, 431 U.S. 63 (1997) . . . . . . . . . . . 9

Hill v. Lockhart, 474 U.S. 52 (1985) . . . . . . . . . 10, 11

United States v. Alber, 56 F.3d 1106 (9th Cir. 1995) . . . . 16

United States v. Brown, 250 F.3d 811 (3rd Cir. 2001) . . . . 18

United States v. Castello, 724 F.2d 813 (9th Cir.),
    cert. denied, 467 U.S. 1254 (1984) . . . . . . . . . . . 9

United States v. Davis, 401 F.3d 1008 (9th Cir. 2005) . . . . 18

United States v. Davis, 428 F.3d 802 (9th Cir. 2005) . . Passim

United States v. Garcia, 401 F.3d 1008 (9th Cir. 2005) . . 9, 16

United States v. Gonzalez, 970 F.2d 1095 (2nd Cir. 1992) . . . 9

United States v. Grimes, 225 F.3d 254 (2nd Cir. 2000) . . 16, 18

United States v. Hirsch, 239 F.3d 221 (2nd Cir. 2001) . . . 9, 18

United States v. Modafferi, 112 F. Supp.2d 1192 (D.Haw. 2000) . 8

United States v. Navarro-Flores, 628 F.2d 1178 (9th Cir. 1980) 8

United States v. Nostratis, 321 F.3d 1206 (9th Cir. 2003) . . . 9

United States v. Ortega-Ascanio, 376 F.3d 879 (9th Cir. 2004) . 9

United States v. Rios-Ortiz, 830 F.2d 1067 (9th Cir. 1987)  8, 9

United States v. Rubalcaba, 811 F.2d 491 (9th Cir. 1987) . 13-15

United States v. Salgado-Ocampo, 159 F.3d 322 (7th Cir. 1998) . 18

United States v. Sanchez-Barreto, 93 F.3d 17
    (1st Cir. 1996) . . . . . . . . . . . . . . . . . 16, 18

United States v. Signori, 844 F.2d 635 (9th Cir. 1988) . 14, 15

United States v. Vidakovich, 911 F.2d 435 (10th Cir. 1990),
    cert. denied, 498 U.S. 1089 (1991) . . . . . . . . . . 16

i

| Statutes | Page(s) |
|---|---|
| 21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . | 6 |
| 21 U.S.C. § 851 . . . . . . . . . . . . . . . . . . | 7 |
| Fed. R. Crim. P. 11 . . . . . . . . . . . . . . | 11, 15, 17 |
| Fed. R. Crim. P. 11(d)(2)(B) . . . . . . . . . . . . . . | 8, 9 |

<u>GOVERNMENT'S OPPOSITION TO DEFENDANT ZASHA BOTELHO'S</u>
<u>MOTION TO WITHDRAW GUILTY PLEA</u>

I.    **Summary of the Case**

On September 16, 2004, an attempt was made by Airborne Express/DHL to deliver a parcel from "Bob White" with an Alameda, California address to "Jackie Silzeyra at 259 #A Hobron Ln, Honolulu, Hawaii 96815."  Because it appeared this address was invalid (addresses on that street start at 300) the parcel was returned to the office.  The employees also noted that the sender's address did not match the sender's address on the airbill and that Airborne Express usually handles business accounts so the parcel appeared to be unusual.

That same day Airborne Express employees attempted to contact the sender at the listed home number and was told by the female who responded that there was no one named "Bob White" at that address, although the address matched the phone number.  The female also stated that her elderly parents lived at the address but no one knew anything about the parcel of "Bob White."

At approximately 7:30 p.m. that same day, a young female, Jacqueline Silveyra ("Silveyra"), appeared at the Airborne Express/DHL office in Honolulu to retrieve the parcel. She presented her driver's license and said she was there to pick up a package that her grandmother sent to her for her daughter's birthday.  Due to computer problems, Airborne Express could not determine if the $126.00 cost for shipping the parcel had been prepaid.  Silveyra was also told that Airborne had to contact the

shipper because the address was not a valid address.  Silveyra told Airborne she would pay the $126.00, but Airborne did not release the parcel.

While there, Silveyra was observed using her cell phione to call a female, who she identified to the employee as "Sasha."  The employee was then given Silveyra's phone and spoke to "Sasha" explaining that Airborne had to contact the shipper prior to releasing the parcel.  Sasha stated that she had the shipper on another line and that she could have the shipper contact Airborne.  The employee told Sasha that she would have to call the number that was on the parcel and Sasha got upset.  Sasha said the shipper had mailed the parcel from his job and that it was closed for the day.  Sasha also stated that no one knew a "Bob White" when they called earlier that day because the people at his work knew him as "Robert Alan White."

Airborne Express opened the parcel in accordance with its policy and found a three piece stereo system, body and two speakers.  The employee also noticed a strong odor of coffee.

The next day, September 17, 2004, Airborne employees contacted the Drug Enforcement Administration Airport Task Force about the suspicious parcel and Task Force Officer (TFO) Kriss Cockett, together with his narcotics canine, Simba, arrived at the Airborne office.  Simba did not alert.

While the officers were still there, an employee received another incoming call from a male who identified himself as "Bob White." He had a latino accent and provided the tracking number which matched the suspicious parcel. He stated he was the shipper and was upset that the parcel was not being released. The employee requested a call back number but "Bob White" stated he had to go to work and did not have a cell number. The caller assured the employee he would call again and left a home number, 510-522-5956.

At about the same time, Silveyra returned to Airborne Express to attempt to pick up the parcel. TFO Cockett recognized her from a photo which the Airborne Express employee had shown him and approached her, identifying himself and stating that he was conducting a drug investigation. He asked if the parcel she was picking up was hers and Silveyra said it was for her daughter's birthday, from her grandmother. TFO Cockett requested permission from Silveyra to open the parcel which she gave.[1]

Officers pried the stereo components open with a screw driver and found ten taped bundles inside each of the stereo components. The exhibits were subsequently analyzed and found to contain a total of 1,329.8 grams (net weight) of d-methamphetamine HCl of between 70% and 95% purity.

---

[1] He subsequently got her to execute a written consent to search form.

3

Silveyra gave a statement to the officers in which she stated that her "cousin," Zasha Botelho, asked her to accept a parcel sent from the mainland in exchange for $1,000.

When Silveyra asked what was in the parcel, Botello said she didn't need to know, but Silveyra knew it was going to be some kind of illegal drugs because she was aware of Botelho's previous drug conviction. She was also aware Botello was still on probation and had spent time in prison.

Silveyra provided Botelho with her address and told her that Wednesdays and Thursdays were good days to get deliveries. On September 16, 2004, Botelho called Silveyra to say that the package would be delivered at 5:00 p.m. that day. When nothing came, she called Botelho who said there was a mixup with the address and asked if Silveyra could go to Airborne to pick it up. Silveyra then met Botelho at a friend's house and received $1,000 (payment for picking up the parcel) and $130 (to pay for the shipping cost).

She then went to the Airborne Express to try and pick up the parcel but was told they needed to talk to the shipper. She said she called Botello while there and that there were several phone calls between Airborne and Botello. When it was clear Airborne wouldn't release the parcel without first talking to "Bob White," Silveyra left. She called Botello and said she wanted the whole thing fixed because her name was on the parcel.

4

Botello reassured Silveyra she didn't need to worry and would not get in trouble.

The next morning, September 17, 2004, she went on her own to the Airborne office because the parcel was addressed to her and she was afraid she would get in trouble.  She tried to call Botello who wasn't answering her phone.

After TFO Cockett talked to her and left to search the package, she contacted Botello by phone to tell her what was happening.  She asked Botello to get her out of this trouble. Botelho told her to go back to the counter and watch the officers open the box and tell Botello what they were doing.  Silveyra said the officers were going through the box and hung up the phone.

After Silveyra's arrest, she gave written consent to search her vehicle and house.  The $1,000 she stated was from Botello was found in the console area of her car.  The officers also searched her cell phone and noted the calls that day.  They also asked her to make a recorded call to Botelho.

During the call Botelho is very guarded, trying to find out what the officers found.  Botelho is very reluctant to talk on the phone and asks whether they gave Silveyra the box back. Botelho is very cautious and cagey and does not make any incriminating statements.  When Silveyra tells her they did not

5

release the box, Botelho tells her to leave it there and split.
Botelho is also concerned that they have her number.

Silveyra was arrested and on February 15, 2005, she
entered a guilty plea to an Information charging her with
conspiracy to distribute and possess with intent to distribute
500 grams or more of methamphetamine in violation of 21 U.S.C.
§ 846.  She agreed to cooperate against Botelho and on
February 17, 2005, a federal grand jury returned a two-count
Indictment charging Botelho with conspiracy and attempt to
possess with intent to distribute 500 grams or more of
methamphetamine, its salts, isomers and salts of its isomers.  At
the time of the instant offense, Botelho was on supervised
release with respect to her prior federal felony conviction in
2000.  Shortly after the incident forming the basis for the
offense, the Probation Office attempted to locate her without
success.  Later, it was determined that Botelho had fled to
California.  A bench warrant was issued and several months later,
Botelho surrendered to the U.S. Marshals Service in Honolulu.
(PSI ¶ 43)  Her supervised release was revoked and she served
five months of incarceration.  Id.

Suzanne Terada, Botelho's Court-appointed counsel in
the prior federal drug felony case represented her in the instant
case until most recently when Alvin Nishimura substituted in as
retained counsel.  (See Withdrawal and Substitution of counsel

6

filed on April 13, 2006.)  The instant motion to withdraw guily plea was filed on April 12, 2006, resulting in the vacation of Botelho's original sentencing date.

A.   **Botelho's Guilty Plea**

On October 25, 2005, Botelho entered a guilty plea before this Court pursuant to a written Memorandum of Plea Agreement.  A true and correct copy of the transcript of the Rule 11 proceeding and a true and correct copy of the Memorandum of Plea Agreement between the United States and Botelho are attached hereto and incorporated herein by reference respectively as Exhibits "A" and "B."  During the plea agreement, this Court took pains to ensure that the plea was taken in accordance with Rule 11.  Botelho was placed under oath and indicated that she had the opportunity to review the plea agreement, understood its terms and the ramifications of her plea.  (See pages 8-9 of Exhibit "A.")  This Court asked government counsel to summarize the maximum penalties which were applicable to the conspiracy count to which the Defendant was pleading guilty.  (Exhibit "A," page 7.)  Counsel advised that there was a possible life term and a minimum mandatory twenty-year term of imprisonment, based upon the special information pursuant to 21 U.S.C. § 851 which had been filed.  (Id. at page 8.)  A maximum life term of supervised release and minimum ten year term of supervised release was also available, and a maximum $8 million fine.

Not only did the prosecutor recite these terms, but the Court repeated them and the Defendant acknowledged her understanding of them. (Id.) These possible penalties were also set forth in detail in paragraph 8 of the Defendant's Memorandum of Plea Agreement, which Botelho acknowledged that she read and reviewed with Suzanne Terada, her attorney, and that she signed the plea agreement after she had reviewed its terms. (Id. at page 9; Exhibit "B," ¶ 8.)

Botelho also told the judge that no one made any promise to her as to what her sentence would be. (Exhibit "A," page 17.) Six months later the instant motion was filed. The sole basis for the motion is Botelho's claim that her former counsel misled her concerning her possible sentence.

## II. Defendant Has Failed to Demonstrate a "Fair and Just" Reason to Withdraw Her Guilty Plea

### A. Standard for Withdrawing Guilty Plea

A district court may permit a defendant to withdraw a guilty plea before sentencing "if the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). United States v. Davis, 428 F.3d 802, 804 (9th Cir. 2005). The defendant has the burden of demonstrating a fair and just reason for withdrawal of a plea. Id.; United States v. Rios-Ortiz, 830 F.2d 1067, 1068 (9th Cir. 1987); United States v. Navarro-Flores, 628 F.2d 1178, 1183 (9th Cir. 1980); United States v. Modafferi, 112 F. Supp.2d 1192, 1196 (D.Haw. 2000);

8

Rule 11(d)(2)(B).  The standard is to be applied liberally.
United States v. Garcia, 401 F.3d 1008, 1010 (9th Cir. 2005).
Fair and just reasons for withdrawal include inadequate Rule 11
plea colloquies, newly discovered evidence, intervening
circumstances, or any other reason for withdrawing the plea that
did not exist when the defendant entered his plea.  Id.  The
District Court's denial of such a motion will not be disturbed
absent an abuse of discretion.  United States v. Ortega-Ascanio,
376 F.3d 879, 883 (9th Cir. 2004); United States v. Nostratis,
321 F.3d 1206, 1207 (9th Cir. 2003); United States v. Rios-Ortiz,
830 F.2d 1067) (9th Cir. 1987); United States v. Castello, 724
F.2d 813, 814 (9th Cir.), cert. denied, 467 U.S. 1254 (1984).
There is a strong presumption of verity that attaches to a
defendant's admissions of guilt at his plea allocution and
against the withdrawal of pleas.  United States v. Hirsch, 239
F.3d 221, 225 (2nd Cir. 2001); United States v. Gonzalez, 970
F.2d 1095, 1101 (2nd Cir. 1992) (quoting Blackledge v. Allison,
431 U.S. 63 (1997).

Botelho claims that her plea was premised upon
misrepresentations by her former counsel, Suzanne Terada,
regarding her potential sentencing guidelines.  According to the
motion, Terada misled the Defendant and gave her "inaccurate
advice to induce her into changing her plea to guilty."  Terada
also gave her incorrect sentencing information in contemplation

9

of her plea.  (Page 1, Memorandum in Support of Motion to
Withdraw guilty plea.)  The alleged inaccurate advice consists of
a letter from Suzanne Terada to the Defendant dated September 14,
2005.  (Exhibit A to Botelho Declaration of Counsel.)  According
to Botelho, prior counsel "informed her that her sentence for the
offense was much less than what has been indicated by the
presentence report."  In the letter dated September 14, 2005,
from prior counsel, Suzanne Terada to Botelho, there is no
mention of the mandatory minimum 20-year sentence of
incarceration which Botelho was facing.  (See Declaration of
counsel, paragraph 3.)  This, Botelho claims, supports her claim
that Terada misled her and that she was not aware the guidelines
were that high.

     In the Davis case, the district court found that
counsel had "grossly mischaracterized" defendant's possible
sentence and had rendered deficient performance by advising the
defendant that his likely sentence was probation to eight years.
(Id. at 804.)  Under the Sentencing Guidelines, there was little,
if any possibility that defendant would be sentenced to probation
or anything close to probation.  Nevertheless, because Defendant
had not proven actual prejudice as a result of the deficient
performance, the district court, under the Hill v. Lockhart, 474
U.S. 52 (1985) case, denied the motion.  The Ninth Circuit
vacated the decision and remanded the case, directing the

10

district court to decide the Motion to Withdraw guilty plea using the correct legal standard. (Id. at 808.)  The Ninth Circuit distinguished the Hill case, finding that the standard there was applicable to post-sentence cases, not pre-sentence cases.  Under the present facts, the Defendant did not need to show actual prejudice to meet his burden of demonstrating a fair and just reason to set aside the plea agreement.

The government submits that under the Davis standard, Botelho cannot meet her burden of demonstrating a fair and just reason to withdraw from the guilty plea.  Although Botelho need not demonstrate actual prejudice, the evidence[2] will show that prior counsel did **not** grossly mischaracterize the possible penalties which Defendant faced and that consistent with the plea agreement, as well as Defendant's statements in the Rule 11

---

[2]  The government anticipates that Suzanne Terada will be present at the hearing on May 15, 2006 and will testify concerning her conversations and meetings with Botelho. Unfortunately, Terada did not keep a copy of her file; she sent the entire file to Dennis Roberts, mainland counsel, who entered a pro hac vice appearance in the prior case with respect to Botelho's revocation proceeding.  Terada acted as local counsel in that matter.   After this motion was filed, Terada requested the file from Alvin Nishimura, who advised the government that he did not have the file; that it had been sent to Roberts.  It is unclear how Nishimura obtained a copy of the September 14, 2005 letter attached to Botelho's motion.  In any event, Terada does not have any of her correspondence to Botelho, but has notes and a specific recollection of discussions with Botelho concerning the twenty year mandatory minimum terms and the guidelines. Terada also met with Botelho and they read the plea agreement together, line by line prior to the change of plea.  (See Declaration of Beverly Wee Sameshima, ¶ 9.)

proceeding, Defendant was advised about and understood the fact that she was facing, at a minimum, a mandatory twenty-year term of imprisonment, with a possibility of life imprisonment at the high end.  (See Declaration of Beverly Wee Sameshima, ¶¶ 4-8.)

Prior counsel Suzanne Terada represented Botelho in the prior federal case and the instant matter until after her change of plea.  Terada also served as local counsel to mainland attorney Dennis Roberts, who made a brief pro hac vice appearance for purposes of Botelho's revocation proceeding.  As the PSI indicates, Botelho's has a significant criminal history and she is very familiar with the criminal justice system, and in particular, the federal sentencing guidelines.  She was convicted just four years previously of a federal felony offense which carried a minimum mandatory term of ten years.  (PSI ¶ 43; Special Information filed on February 18, 2005 and Exhibit "A" attached thereto.)  Terada and Botelho had a number of conversations and meetings prior to Botelho's guilty plea in this case.  The focus of the meetings was for Botelho to cooperate so that she could obtain a sentence below the statutory minimum mandatory term which was enhanced due to the filing of a special information, based upon her prior felony conviction.  There was no question that Botelho was facing a twenty-year minimum term. (See Declaration of Beverly Wee Sameshima, ¶¶ 2-8.)  This was discussed with her by Terada and repeatedly raised during the

12

Rule 11 proceeding.  Both the prosecutor and the Court referenced these penalties.  In response, the Defendant acknowledged her understanding and knowledge of these penalties.  (See pages 7-8 of Exhibit "A.")  The plea agreement also contains a penalties provision which contained the minimum and maximum punishment for the offense.  (See Exhibit "B," paragraph 8.)  Botelho specifically acknowledged her ability to read and write English, her discussion of the plea agreement with Terada, her signature on the plea agreement and her understanding of its terms.  She also advised this Court that she had not been given any promises as to the sentence.  (See Exhibit "B," pages 3, 8-9, 17.)  Botelho also acknowledged that if the sentence was worse or more severe than expected, she would not be able to withdraw from the plea.  (Id. at 16.)

     In a case which predates Davis, United States v. Rubalcaba, 811 F.2d 491 (9th Cir. 1987), the defendant sought to withdraw his guilty plea pre-sentence based upon claims, inter alia, that he misunderstood the plea agreement and was denied effective representation.  Specifically, defendant asserted that his attorney erroneously told him that the sentences on all four counts would run concurrently.  The Ninth Circuit rejected these claims and reasserted the two part test in evaluating claims of ineffective assistance of counsel.  At the plea hearing, Defendant's attorney stated that the plea agreement included

13

concurrent sentences only as to two of the counts.  Moreover, Defendant told the Court that no one made any promises regarding a lesser sentence.  (Id. at 493.)

Similarly, in United States v. Signori, 844 F.2d 635 (9th Cir. 1988), the Ninth Circuit held that the defendant was not entitled to withdraw his guilty plea based upon the unsworn allegation that defense counsel led him to believe that he could withdraw his guilty plea at anytime.  In his motion, the Defendant contended that his prior attorney counseled him that a guilty plea may be withdrawn as of right at any time, notwithstanding a statement in the plea agreement, and that his counsel had explained it was perfectly proper to lie under oath to the judge in order to enter the guilty plea and thereafter change his position to not guilty with impunity.  (Id. at 637.) Defense counsel submitted an affidavit denying those allegations which was unrebutted by the Defendant.

While acknowledging that a guilty plea cannot be induced by misrepresentation, the Court found that the District Court took great pains at the Rule 11 hearing to ensure that the Defendant understood his rights and the consequences to pleading guilty and rejected all claims that his counsel was incompetent. (Id. at 639.)

The Davis court noted that the Signori and Rubalcaba cases were distinguishable on their facts.  Unlike the situation

14

in _Davis_, in _Signori_, defendant could not prove his counsel's misrepresentation.  The _Rubalcaba_ court also found unproven defendant's claim that counsel gave a grossly wrong prediction of his sentencing range.  In stark contrast, counsel in _Davis_ was found to have advised defendant that his potential sentencing range was probation to eight years, a gross mischaracterization of the guidelines.  (_Id._ at 806-807.)

Likewise here, Botelho will need to advance more than the hearsay allegations set forth by her counsel in order to meet her burden that Terada grossly mischaracterized her possible sentence.  Terada denies these allegations and will provide testimony to that effect.  This Court took great pains to conduct a thorough Rule 11 colloquy and to ensure that Botelho's plea was knowing and voluntary and that she understood the ramifications of the plea.  (See Exhibit "A.")  Botelho's plea agreement specifically sets forth the possible penalties, including the twenty-year minimum mandatory term and also contains an express agreement that Botelho will not seek to withdraw from the plea.  (See Exhibit "B," ¶¶ 8 and 21.)  _See, e.g._, _Rubalcaba_, _supra_, at 807 (district court's recitation of possible sentence at plea hearing counters exactly the alleged misinformation).  This Court also told Botelho that there was no "buyer's remorse;" in other words, she would not be able to withdraw from the plea if the sentence was worse or more severe than expected.  (Exhibit "A,"

15

page 16.)  The facts and circumstances of this case indicate that
Botelho is simply experiencing buyers' remorse and is seeking to
impugn her prior counsel's reputation and competence in order to
withdraw from her plea.

> B.  **Length of Delay Between Plea and Motion**

Another factor which this court can consider in denying
Botelho's motion is the length of time between her plea and her
motion to withdraw the plea.  In United States v. Garcia, 401
F.3d 1008, 1013 (9th Cir. 2005), the Ninth Circuit considered the
length of time between the guilty plea and the motion to withdraw
the plea as one of the factors in making a "fair and just"
analysis.  Delay in moving to withdraw a plea is a "barometer of
the defendant's candor with the court about his reasons for
withdrawal."  (Id. at 1012.)  Although delay is not to be
considered standing alone, it can be considered by this Court.
See also, United States v. Alber, 56 F.3d 1106, 1111 (9th Cir.
1995) (no abuse of discretion in denying defendant's motion where
three month delay where reason was defendant's realization of
greater sentence); United States v. Grimes, 225 F.3d 254, 259
(2nd Cir. 2000) (court sets forth three factor test including
time lapse between plea and withdrawal motion); United States v.
Sanchez-Barreto, 93 F.3d 17, 23 (1st Cir. 1996) (the longer the
defendant waits to withdraw plea, more potency his motion must
have to prevail); United States v. Vidakovich, 911 F.2d 435, 439-

40 (10th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1089 (1991) (if defendant delayed filing withdrawal motion and has competent counsel, reasons for withdrawal must have considerably more force).

Botelho entered her plea in October 2005.  Given the six-month delay between the guilty plea and withdrawal motion, her reasons should have considerable potency to win her motion. The stated reasons do not rise to the level of "fair and just reason," but are alleged to be based upon coercion or misrepresentation by prior counsel.  Botelho's assertions are contradicted by her prior counsel's assertions of the conversations between the two concerning the plea agreement, as well as the record of the Rule 11 proceeding where Botelho specifically told this Court that she was not threatened or forced by anyone to plead guilty.  (See page 5 of Exhibit "A.") Botelho also told this Court that no one made any promise to her regarding what her sentence would be.  (See page 17, Exhibit "A.")  The possible penalties which included a range from twenty years to life were also repeatedly covered during the Rule 11 proceeding, further undermining Botelho's assertions.  (See Exhibit "A," pages 7-9.)

C.  **No Colorable Claim of Innocence**

Another factor which this court should consider in deciding the motion is whether Botelho has asserted a colorable

17

claim of innocence.  United States v. Brown, 250 F.3d 811, 818

(3rd Cir. 2001); United States v. Hirsch, 239 F.3d 221, 225 (2nd

Cir. 2001) (Where claims of innocence wholly conclusory

"insufficient to disturb strong presumption of veracity that

attaches to admissions of guilt at plea allocution."); United

States v. Grimes, 225 F.3d 254, 259 (2nd Cir. 2000); United

States v. Salgado-Ocampo, 159 F.3d 322, 325 (7th Cir. 1998)

(same); United States v. Sanchez-Barreto, 93 F.3d 17, 23 (1st

Cir. 1996) (self-serving, unsupported claims of innocence not

sufficient to support withdrawal of guilty plea).  Cf, United

States v. Davis, 401 F.3d 1008, 1011 (9th Cir. 2005) (Defendant's

failure to proclaim innocence should not count against him in

motion to withdraw guilty plea; however, can be considered in

support of motion).  Botelho has not raised any claim of

innocence.  To the contrary, she told this Court under oath in

some detail that she was guilty of the offense and was pleading

guilty because she was guilty.  She also admitted to the proffer

which the prosecutor offered regarding the offense conduct and

told the Court in her own words what she did that made her

guilty.  (See Exhibit "A," pages 6, 18-22.)  The plea agreement

also contains a detailed recitation of the factual basis for the

plea.  (See Exhibit "B," ¶ 9.)  Botelho acknowledged reading the

plea agreement, reviewing it with Terada, and signing it.  She

18

also acknowledged the plea agreement as the entire agreement between the parties.  (Exhibit "A," page 9.)

Granting Botelho's motion under the facts and circumstances of this case would make a mockery of the Rule 11 proceeding and undermine the value of plea proceedings.  Botelho cannot meet her burden of proving that her counsel grossly mischaracterized her possible sentencing guidelines.  In the face of Botelho's prior federal drug case, the terms of the plea agreement and her assertions under oath during the Rule 11 proceeding, the record does not support a fair and just reason for the withdrawal of Botelho's guilty plea.

WHEREFORE, the government requests that Botelho's motion be denied and that sentencing be scheduled without further delay.

DATED:  May 5, 2006, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By  /s/ Beverly Wee Sameshima
   BEVERLY WEE SAMESHIMA
   Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically by EM/ECF:

Alvin Nishimura, Esq.
aknlaw@verizon.net

Attorney for Defendant
ZASHA BOTELHO

Served by hand-delivery:

Malia Eversole
Senior U.S. Probation Officer
300 Ala Moana Blvd.
Box 50111, Room C-110
Honolulu, HI   96850

DATED:  May 5, 2006, at Honolulu, Hawaii.


    /s/ Dawn M. Aihara