IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00071 JMS |
| | ) | |
| Plaintiff, | ) | DECLARATION OF BEVERLY WEE |
| | ) | SAMESHIMA |
| vs. | ) | |
| | ) | |
| ZASHA BOTELHO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DECLARATION OF BEVERLY WEE SAMESHIMA

I, Beverly Wee Sameshima, hereby state:

1. I am an Assistant U.S. Attorney for the District of Hawaii responsible for representing the United States in this case.

2. After receiving the Order Finding Waiver of Attorney-Client privilege, I faxed a copy of the Order to attorney Suzanne Terada and thereafter contacted Suzanne Terada to discuss the instant motion. Ms. Terada advised me that she was initially appointed as a CJA panel attorney to represent Defendant Zasha Botelho ("Botelho") on or about April, 2000, in Criminal No. 00-00187-03 HG. In that case, Botelho was charged with violations of 21 U.S.C. Sections 846 and 841(a)(1). Ms. Terada told me that in this first case, Botelho cooperated, was debriefed by the government and was sentenced to jail time and supervised release.

3. In January, 2005, Ms. Terada was contacted by the Probation Office regarding an Order to Show Cause for revocation

of Botelho's supervised release.  Ms. Terada then served as local counsel to a California attorney, Dennis Roberts, who entered an appearance pro hac vice with respect to Botelho's revocation proceeding in the first case.

    4.  After Botelho was indicted in this case, Ms. Terada was appointed to represent her.  Ms. Terada advised me that in February, 2005, she reviewed Sections 841(a)(1),(b)(1)(A) and 846 with Botelho and reminded her that the sections were the same as the last case.  Ms. Terada advised Botelho that there was a twenty year minimum mandatory sentence but discussed cooperation as a way to obtain a sentence below those statutory minimums.  Ms. Terada told Botelho she was unsure how the revocation would impact her sentence.

    5.  On or about February 25, 2005, Ms. Terada again reviewed the statutes and penalties with Botelho.  They then discussed the merits of the case and possible cooperation and debriefing.

    6.  In April, 2005, Ms. Terada reviewed written discovery with Botelho and at her request, transmitted the file to California counsel, Dennis Roberts.  Ms. Terada did not keep a copy of that file.

    7.  In or around September, 2005, Ms. Terada listened to several audio cassette tapes provided to her in discovery by the government with Botelho in the Federal Detention Center.  At this time, it was also anticipated that Botelho would be debriefed by

the case agent, Kriss Cockett. According to Ms. Terada, at this point, Botelho had decided to cooperate with the government as a way to minimize her potential sentence.

    8. Ms. Terada advised me that the September 14, 2005 letter which is attached as an Exhibit to Botelho's motion was generated setting forth the guidelines assuming that Botelho would be cooperating. Ms. Terada told Botelho that the letter did not include the impact of any revocation. Ms. Terada advised me that the September 14th letter did not include the statutory term of imprisonment because it was based upon Botelho's anticipated debriefing and cooperation. Ms. Terada advised me that the statutory minimum was repeatedly discussed with Botelho and she understood that it applied to her.

    9. Ms. Terada advised that she and Botelho reviewed the Memorandum of Plea Agreement prior to the change of plea hearing, including the minimum mandatory twenty year term and guideline range.

    I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of May, at Honolulu, Hawaii.

                                              /s/ Beverly Wee Sameshima
                                              BEVERLY WEE SAMESHIMA