1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF HAWAII

3

UNITED STATES OF AMERICA,        ) CR 05-00071 JMS
4                                 )
              Plaintiff,          ) Honolulu, Hawaii
5                                 ) October 24, 2005
       vs.                        ) 10:00 a.m.
6                                 )
ZASHA BOTELHO,                    ) Motion for Withdrawal of Not
7                                 ) Guilty Plea and to Plead
              Defendant.          ) Anew
8    _____)

9

                    TRANSCRIPT OF PROCEEDINGS
10       BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
                 UNITED STATES DISTRICT JUDGE
11
     APPEARANCES:
12   For the Plaintiff:     BEVERLY WEE SAMESHIMA, ESQ.
                            Office of the United States Attorney
13                          PJKK Federal Building
                            300 Ala Moana Blvd., Suite 6100
14                          Honolulu, Hawaii  96850

15   For the Defendant:     SUZANNE T. TERADA, ESQ.
                            Attorney at Law
16                          Pacific Tower
                            1001 Bishop Street, Suite 1510
17                          Honolulu, Hawaii  96813

18   Official Court Reporter: Sharon Ross, CSR, RPR, CRR
                            United States District Court
19                          300 Ala Moana Blvd., Room C-283
                            Honolulu, Hawaii  96850
20                          (808) 535-9200

21

22

23

24

25   Proceedings recorded by machine shorthand, transcript produced
     with computer-aided transcription (CAT).



EXHIBIT A

1    MONDAY, OCTOBER 24, 2005                    10:00 A.M.

2         COURTROOM MANAGER:  Criminal No. 05-00071 JMS, United

3    States of America versus Zasha Botelho.

4         This case is called for a hearing on a Motion For

10:04AM    5    Withdrawal of Not Guilty Plea and to Plead Anew.

6         MS. SAMESHIMA:  Yes, good morning, Your Honor.

7    Beverly Wee Sameshima on behalf of the United States.

8         THE COURT:  Yes, good morning.

9         MS. TERADA:  Good morning, Your Honor.  Suzanne

10:04AM    10   Terada, panel attorney for Zasha Botelho who is also present in

11   court.

12        THE COURT:  Okay.  Good morning.  Are we ready to

13   proceed then?

14        MS. TERADA:  Yes.  The plea agreement has been signed,

10:04AM    15   and the original is at the podium.

16        THE COURT:  Okay.  Why don't you and your client

17   approach then?

18        Okay.  Ms. Botelho, I understand that you do want to

19   enter a plea of guilty pursuant to a plea agreement today?

10:04AM    20        THE DEFENDANT:  Yes.

21        THE COURT:  Okay.  Before I can accept your guilty

22   plea, there are a number of questions I need to ask you to make

23   sure that your plea is voluntary and also to make sure that you

24   did commit the crime as set forth in Count 1 of the indictment.

10:05AM    25        So, it's important you understand my questions.  If

1    you don't understand me, just ask me to repeat, okay?

2        And if you wish to consult with Ms. Terada, you can do

3    that as well.  Do you understand that?

4        THE DEFENDANT:  Yes, I do.

10:05AM    5        THE COURT:  Okay.  Could we swear the defendant,

6    please?

7        COURTROOM MANAGER:  Yes, Your Honor.

8      (The defendant was sworn to answer truthfully.)

9        THE COURT:  What is your full name?

10:05AM    10        THE DEFENDANT:  Zasha Kahaleu-Kio'liliha Botelho.

11        THE COURT:  And how old are you?

12        THE DEFENDANT:  I'm 28 years old.

13        THE COURT:  And how far did you go in school?

14        THE DEFENDANT:  To the ninth grade.

10:05AM    15        THE COURT:  And do you read --

16        THE DEFENDANT:  I have my GED.

17        THE COURT:  You have a GED?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Okay.  And obviously English is your first

10:05AM    20    language?

21        THE DEFENDANT:  Yes, it is.

22        THE COURT:  Were you able to read and understand both

23    the indictment and the plea agreement in this case?

24        THE DEFENDANT:  Yes, I have.

10:05AM    25        THE COURT:  Okay.  And what is your most recent

```
       1    employment?
       2           THE DEFENDANT:  I was working for VIP, which is a
       3    tourist -- it shuttles tourists back and forth to the hotel, to
       4    attractions there and so forth.
0:06AM 5           THE COURT:  Okay.  You were working for that company?
       6           THE DEFENDANT:  Yes.
       7           THE COURT:  Now, have you taken any drugs, whether
       8    legal or illegal, or had any alcohol in the last 24 hours?
       9           THE DEFENDANT:  No.
0:06AM 10          THE COURT:  Have you ever been treated for any mental
      11    illness?
      12           THE DEFENDANT:  No, I haven't.
      13           THE COURT:  For addiction to a controlled substance or
      14    alcohol?
0:06AM 15          MS. TERADA:  Your Honor, she is a member of NA and AA
      16    and --
      17           THE DEFENDANT:  500 -- the 500-hour program.
      18           MS. TERADA:  And so, in that respect, she has had
      19    counseling for an addiction.
0:06AM 20          THE COURT:  Okay.  But you haven't had any drugs or
      21    alcohol for some time; is that right?
      22           THE DEFENDANT:  Right, that's correct.
      23           THE COURT:  Okay.  You've been incarcerated for how
      24    long?
0:06AM 25          THE DEFENDANT:  Nine months.
```

1          THE COURT:  All right.  And you've been clean during
2    that time period?
3                THE DEFENDANT:  Yes.
4                THE COURT:  Okay.  Is your mind clear here today?
10:06AM    5                THE DEFENDANT:  Yes, it is.
6                THE COURT:  Do you understand why you're here today?
7                THE DEFENDANT:  Yes, I do.
8                THE COURT:  Tell me what you're planning to do here
9    today.
10:06AM    10               THE DEFENDANT:  I'm planning to change a plea from not
11   guilty to guilty.
12               THE COURT:  Okay.  Have you had enough time to talk to
13   Ms. Terada both about the case itself and your decision to
14   plead guilty?
10:07AM    15               THE DEFENDANT:  Yes, I have.
16               THE COURT:  Are you satisfied with the services she's
17   provided to you?
18               THE DEFENDANT:  Yes, I am.
19               THE COURT:  Has anyone made any promise or assurance
10:07AM    20   to you of any kind, other than what's in the plea agreement, in
21   an effort to get you to plead guilty?
22               THE DEFENDANT:  No.
23               THE COURT:  Has anyone threatened you or anyone else
24   or forced you in any way in an effort to get you to plead
10:07AM    25   guilty?

1           THE DEFENDANT:  No.

2           THE COURT:  Are you pleading guilty because it's your

3    decision to do so and because, in fact, you are guilty?

4           THE DEFENDANT:  Yes, I am.

10:07AM    5           THE COURT:  Ms. Terada, do you have any reason to

6    doubt your client's competence to enter a knowing and informed

7    plea today?

8           MS. TERADA:  I have no problems with it, Your Honor.

9           THE COURT:  Okay.

10:07AM   10           Ms. Botelho, do you have a copy of the indictment in

11   front of you there?

12           THE DEFENDANT:  Yes, I do.

13           MS. TERADA:  Oh, no, that's the plea agreement.

14           THE COURT:  Ms. Sameshima, maybe you can help?

10:08AM   15           MS. SAMESHIMA:  Yes.  I'm sorry.  Here you go.

16           THE COURT:  Okay.

17           MS. TERADA:  There is an indictment in front of her.

18           THE COURT:  All right.  Do you have a copy of the

19   indictment in front of you now, Ms. Botelho?

10:08AM   20           THE DEFENDANT:  Yes, I do.

21           THE COURT:  Do you understand that Count 1 of that

22   indictment charges that from a date unknown and then up to

23   around September 17th of 2004, you conspired with other

24   individuals to knowingly and intentionally distribute and

10:08AM   25   possess with intent to distribute 500 grams or more of a

1    substance and mixture containing a detectable amount of

2    methamphetamine, its salts, isomers and salts of its isomers?

3    Do you understand that?

4              THE DEFENDANT:  Yes, I do understand.

10:08AM    5              THE COURT:  And then do you understand there are three

6    overt acts set forth in the indictment?

7              THE DEFENDANT:  Oh, this here.

8              MS. TERADA:  Yeah.

9              THE COURT:  Have you seen those and read those before?

10:09AM   10              THE DEFENDANT:  Yes, I have.

11              THE COURT:  Okay.  So, you understand it says that in

12    September of 2004, you asked another individual to accept a

13    parcel from California in return for a thousand dollars?

14              THE DEFENDANT:  Yes, that's correct.

10:09AM   15              THE COURT:  And that in the same month you caused a

16    parcel to be sent from California containing methamphetamine

17    and that you paid that individual $1,000?  Do you understand

18    that charge?

19              THE DEFENDANT:  Yes, I do.

10:09AM   20              THE COURT:  Ms. Sameshima, could you put the maximum

21    penalties that might apply in this case on the record?

22              MS. SAMESHIMA:  Yes, Your Honor.

23              In this case the government has filed a special

24    information pursuant to Section 21 of the United States Code

10:09AM   25    Section 851 in order to seek enhanced penalties.  And with the

1  filing of that special information, Ms. Botelho is looking at a

2  minimum mandatory term of imprisonment of 20 years and a

3  possible life term. She's looking at supervised release of at

4  least ten years and possibly life, and she's looking at a

10:09AM  5  maximum $8 million fine and a $100 special assessment.

6          THE COURT: Okay. Ms. Botelho, do you understand that

7  the maximum punishment you could face is up to life

8  imprisonment?

9          THE DEFENDANT: Yes, I do.

10:10AM  10         THE COURT: And that there's a 20-year mandatory

11  minimum?

12         THE DEFENDANT: Yes.

13         THE COURT: And a fine of up to $8 million? Do you

14  understand that?

10:10AM  15         THE DEFENDANT: Yes, I do.

16         THE COURT: And supervised release of up to life, but

17  not less than ten years?

18         THE DEFENDANT: Yes.

19         THE COURT: And a $100 special assessment?

10:10AM  20         THE DEFENDANT: Yes.

21         THE COURT: Okay. Now, do you have a copy of the

22  original plea agreement there, Ms. Terada?

23         MS. TERADA: The original is here, Your Honor, yes.

24         THE COURT: Okay.

10:10AM  25         MS. TERADA: The original is in front of us.

```
 1              THE COURT:  All right.

 2              Ms. Botelho, do you see the plea agreement there in

 3      front of you?

 4              THE DEFENDANT:  Yes, I do.

 5              THE COURT:  Have you had a chance to read that and

 6      review it with your attorney?

 7              THE DEFENDANT:  Yes, I have.

 8              THE COURT:  Ms. Terada, if you could have your client

 9      identify her signature on that plea agreement, please.

10              MS. TERADA:  Your Honor, I am turning to the last

11      page.

12              THE DEFENDANT:  Yes, that's my -- that is my signature

13      here on the last page.

14              THE COURT:  Okay.  Thank you.  And does this plea

15      agreement reflect the entire agreement, that is, the entire

16      understanding between you and the United States?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Ms. Sameshima, could you put the essential

19      terms of the plea agreement on the record, please?

20              MS. SAMESHIMA:  Yes, Your Honor.  In the plea

21      agreement the defendant is acknowledging that the government

22      filed, on February 18th, 2005, a special information in order

23      to seek enhanced sentencing.  And in that section of the plea

24      agreement, the defendant admits that she was convicted on or

25      about July 8th, 2001, in this -- in the U.S. District Court for
```

10:10AM 5

10:10AM 10

10:10AM 15

10:11AM 20

10:11AM 25

1       the District of Hawaii in another criminal matter for
2       conspiracy to distribute and possess with intent to distribute
3       cocaine and also for aiding -- and heroin and for aiding and
4       abetting in the possession with intent to distribute heroin.

10:11AM    5       The defendant did receive a sentence of five years
6       pursuant to that conviction.  And she stipulates that the
7       allegations that are set forth in the special information are
8       true and correct, that that is her prior federal felony drug
9       conviction and that it was valid and final as of the time that
10:11AM   10       she committed the offense that's charged here.

11       There is -- she agrees that she's going to plead
12       guilty to Count 1 of the indictment, which is the conspiracy
13       count charging her with distribution -- conspiracy to
14       distribute and possess with intent to distribute 500 grams or
10:12AM   15       more of methamphetamine.  And the government will be dis --
16       agrees that it will dismiss Count 2 of the indictment after
17       sentencing.

18       There's a penalty section in the plea agreement that
19       sets forth the minimum and the maximum penalties.  And I went
10:12AM   20       over those earlier in response to the Court's questions.

21       There is also a provision in this plea agreement which
22       sets forth the factual basis for the plea, and that's set forth
23       in Paragraph 9 of the plea agreement.

24       There is a specific waiver of all rights of appeal,
10:12AM   25       both collateral and direct appeal, that's in the plea

1 agreement.  And pursuant to that, the defendant understands and
2 is expressively waiving her right to appeal her sentence except
3 in two limited circumstances.  The defendant reserves her right
4 to appeal -- if this court were to sentence her higher than the
0:12AM 5 guidelines -- the advisory guidelines that are found to apply
6 to her, she can appeal that portion of the sentence which is
7 higher than those guidelines.  And she can also file an appeal
8 if she has a claim that Ms. Terada is somehow ineffective in
9 representing her, but she is giving up all other rights to
0:13AM 10 appeal her sentence.

11   The plea agreement provides that the prosecution is
12 retaining its right to appeal.  There's a provision -- there
13 are a number of paragraphs in this plea agreement in which she
14 understands she's giving up certain rights as a result of
0:13AM 15 entering a guilty plea.  And specifically she is giving up her
16 right to have a jury make a determination beyond a reasonable
17 doubt as to the weight and the quantity of the controlled
18 substance that's involved in this case.

19   She agrees that she will be bound by this plea
0:13AM 20 agreement and not seek to withdraw the plea.  However, she
21 understands that if she does change her mind and file a motion
22 to withdraw the guilty plea, then the statements that she's
23 going to be making today and any statement she makes to law
24 enforcement officers will be used in a trial against her.
0:13AM 25   And she is waiving protections that are afforded by

1    the Federal Rules of Criminal Procedure and Federal Rules of

2    Evidence made in the context of this proceeding.

3            There is no cooperation clause in this plea agreement.

4            THE COURT:  Okay.

10:14AM    5            Ms. Botelho, did -- first of all, Ms. Terada, do you

6    agree with that recitation?

7            MS. TERADA:  Yes, Your Honor.

8            THE COURT:  Ms. Botelho, did you understand everything

9    Ms. Sameshima said?

10:14AM    10            THE DEFENDANT:  Yes, I do.

11            THE COURT:  Okay.  I want to go over with you the

12    waiver of appellate rights to make sure you understand that.

13            Normally after a person is convicted in Federal Court,

14    they have a right to appeal the conviction and sentence to the

10:14AM    15    Ninth Circuit Court of Appeals.  Also, in some circumstances,

16    you can challenge your sentence or conviction by going back to

17    the trial court -- that would be coming back to me -- in what's

18    called a collateral attack.  And you're giving up both your

19    right to appeal to the Ninth Circuit and to challenge your

10:14AM    20    conviction or sentence with me, except in two circumstances.

21    One is you're retaining the right to claim that your attorney

22    acted ineffectively on your behalf.  Do you understand that?

23            THE DEFENDANT:  Yes.

24            THE COURT:  And second, once the Court determines what

10:15AM    25    guideline range applies to your case, if the Court sentences

1    you above that guideline range, you can challenge that

2    incremental extra portion of your sentence above the guideline

3    range.  Do you understand that?

4           THE DEFENDANT:  Yes, I do.

10:15AM    5           THE COURT:  And the government is keeping its right to

6    appeal.  Do you understand that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Okay.  Now, I want to go over with you

9    some of the rights you have that you're giving up through your

10:15AM   10    plea of guilty today.

11           Do you understand that under the constitution and laws

12    of the United States, you are entitled to a trial by jury on

13    the charges against you?

14           THE DEFENDANT:  Yes, I understand.

10:15AM   15           THE COURT:  And do you understand that at a trial, you

16    would be presumed innocent and the government would have the

17    burden of presenting evidence to prove you guilty beyond a

18    reasonable doubt and that 12 jurors would have to unanimously

19    agree you were guilty beyond a reasonable doubt?

10:15AM   20           THE DEFENDANT:  Yes.

21           THE COURT:  And at no time would you have the burden

22    to prove that you were not guilty.  Do you understand that?

23           THE DEFENDANT:  Yes, I do.

24           THE COURT:  Do you understand that at a trial you

10:15AM   25    would have the right to assistance of counsel, that you could

1    see and hear all the government witnesses presented and you

2    could have your attorney cross-examine or question the

3    government witnesses?

4         THE DEFENDANT:   Yes.

10:16AM    5         THE COURT:   Do you understand that you could object to

6    evidence offered by the government and that you could offer

7    evidence on your own behalf; and if, for some reason, you had

8    difficulty getting evidence or a witness to come to court, you

9    could use the Court's subpoena power and compel that evidence

10:16AM   10    to come forward?

11         THE DEFENDANT:   Yes, I do.

12         THE COURT:   Do you understand that you have a

13    constitutional right to testify on your own behalf, if you

14    chose to do so; but you would also have a constitutional right

10:16AM   15    not to testify.  And if you did not testify, the jury could

16    draw no inference or suggestion of guilt by the fact that you

17    did not testify.  Do you understand that?

18         THE DEFENDANT:   Yes.

19         THE COURT:   Do you understand that by entering a plea

10:16AM   20    of guilty, if I accept your plea, there will be no trial; and

21    you will have waived or given up all of the rights that we just

22    discussed?

23         THE DEFENDANT:   Yes, I understand.

24         THE COURT:   Do you also understand if you want to go

10:16AM   25    forward this morning, you have to give up your right not to

1   incriminate yourself because I will ask you questions about

2   what you did?  Do you understand that?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Do you also understand that the offense to

10:17AM   5   which you are pleading guilty is a felony offense and that if

6   your plea is accepted and if you are adjudged guilty of that

7   offense, you may lose certain valuable civil rights, such as

8   the right to vote, the right to serve on a jury, the right to

9   hold public office and the right to possess a firearm or

10:17AM   10   ammunition?

11            THE DEFENDANT:  Yes, I understand.

12            THE COURT:  Ms. Terada, are there currently any

13   pending state charges or violations of any sort?

14            MS. TERADA:  No, Your Honor.

10:17AM   15            THE COURT:  Now, I want to go over some issues

16   relating to sentencing with you, Ms. Botelho.  Do you

17   understand that United States law establishes detailed

18   sentencing guidelines which specify sentences for people

19   convicted of federal crimes?

10:17AM   20            THE DEFENDANT:  Yes, I do.

21            THE COURT:  Have you discussed that with Ms. Terada?

22            THE DEFENDANT:  Yes, I have.

23            THE COURT:  Now, the sentencing judge must consider

24   these guidelines.  They're no longer mandatory, but the Court

10:17AM   25   must consider these guidelines along with other factors set

1    forth in a law at 18 United States Code Section 3553(a).

2            Have you and your attorney also talked about how these

3    guidelines and sentencing factors might apply to your case?

4            THE DEFENDANT:  Yes, we have.

10:18AM   5            THE COURT:  And do you understand that the Court will

6    not be able to determine the guidelines for your case until

7    after a presentence investigation report has been completed and

8    both you and the government have an opportunity to review that

9    report and make any objections to it?

10:18AM   10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you understand that after it has been

12   determined what guideline applies to your case, I will consider

13   the guidelines and those other factors set forth in

14   Section 3553(a) and that I may impose a sentence that is less

10:18AM   15  severe or more severe than called for by the guidelines?

16           THE DEFENDANT:  Yes.

17           THE COURT:  And do you understand that if the sentence

18   is worse or more severe than expected, you will not be able to

19   withdraw from your plea for that reason?

10:18AM   20           THE DEFENDANT:  Yes, I understand.

21           THE COURT:  In other words, there's no buyer's

22   remorse.  Do you understand that?

23           THE DEFENDANT:  Right.

24           THE COURT:  Okay.  Do you also understand that the

10:18AM   25  Court is not required to accept the plea agreement but may

1    reject the plea agreement at a later date?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Has anyone made any promise to you as to

4    what your sentence will be?

10:18AM    5              THE DEFENDANT:  No.

6              THE COURT:  Do you understand that if you are

7    sentenced to prison, a term of supervised release will follow

8    and that if you violate any conditions of supervised release,

9    you can be sent back to prison?

10:19AM   10              THE DEFENDANT:  Yes, I do.

11              THE COURT:  Do you understand that parole has been

12    abolished in the federal system and that if, in fact, you are

13    sentenced to prison, you will not be released early on parole?

14              THE DEFENDANT:  Yes.

10:19AM   15              THE COURT:  Is either restitution or forfeiture

16    applicable in this case?

17              MS. SAMESHIMA:  No, it's not, Your Honor.

18              THE COURT:  Okay.

19              Ms. Botelho, I need to make sure that you, in fact,

10:19AM   20    did commit the crime for which you are prepared to plead

21    guilty, that is, Count 1.  So, I'm going to ask Ms. Sameshima

22    to do two things:  First, to tell us the elements of this

23    offense and then what evidence the government has it could

24    bring forward.

10:19AM   25              MS. SAMESHIMA:  Yes, Your Honor.

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | For conspiracy, the elements of that offense are an              |
|       | 2  | agreement between the defendant and at least one other           |
|       | 3  | co-conspirator to commit the illegal objective which in this     |
|       | 4  | case is the distribution and the possession with intent to       |
| 10:19AM | 5 | distribute 500 grams of methamphetamine, that the defendant is |
|       | 6  | a member of the conspiracy knowing its illegal object and        |
|       | 7  | intending to accomplish that object; and, third, the government  |
|       | 8  | would have to prove to a jury beyond a reasonable doubt that     |
|       | 9  | the conspiracy involved more -- 500 grams or more or that this   |
| 10:20AM | 10 | defendant was responsible for 500 grams or more of             |
|       | 11 | methamphetamine.                                                 |
|       | 12 | THE COURT:  Do you agree with that, Ms. Terada?                  |
|       | 13 | MS. TERADA:  Yes, Your Honor.                                    |
|       | 14 | THE COURT:  Okay.  And if you would go into the                 |
| 10:20AM | 15 | evidence you're prepared to present.                           |
|       | 16 | MS. SAMESHIMA:  Yes, Your Honor.  The evidence would            |
|       | 17 | be the testimony of the co-conspirator, Jacque Silveyra, that   |
|       | 18 | sometime in September of 2004, the defendant asked her to       |
|       | 19 | receive a parcel containing methamphetamine and, in exchange,   |
| 10:20AM | 20 | she would pay the defendant a thousand dollars; that in        |
|       | 21 | September -- around September 15th or 16th, she did contact the |
|       | 22 | defendant and told her that the parcel would be sent and would  |
|       | 23 | arrive via Airborne Express or DHL later that same day.  That   |
|       | 24 | would be September 16th of 2004.  And later another call was    |
| 10:20AM | 25 | made to the defendant and -- another call was made by the      |

1    defendant to Ms. Silveyra asking her to go ahead and pick it up
2    at the offices of Airborne.

3          The evidence would be that on September 17th,
4    Ms. Silveyra did go to the Airborne Express office and
10:21AM    5    attempted to pick it up.  However, once she was there, she was
6    not able to pick it up originally.  And in the meantime, the
7    employees of Airborne, who had felt that there were certain
8    characteristics of the parcel that were suspicious, had
9    contacted certain officers of the Hawaii Airport Task Force who
10:21AM    10    were there when Ms. Silveyra arrived.

11          They obtained consent to open that parcel; and after
12    they opened it, they found stereo equipment.  And hidden within
13    the stereo receivers they found a total of 10 packages that
14    contained a crys -- a white crystalline substance.  Those
10:21AM    15    packages were taped in black tape, and they field tested the --
16    a number of the parcels and determined they were
17    methamphetamine.

18          Those parcels were subsequently sent to the DEA
19    laboratory for analysis, and the forensic chemist at the DEA
10:22AM    20    Southwest Lab has determined that the total number of packages
21    contained over 1200 grams of methamphetamine ranging from 70
22    percent to 95 percent purity.

23          And the evidence would also be that Ms. Silveyra would
24    testify that she did, in fact, receive a thousand dollars from
10:22AM    25    the defendant prior to the time that she went to pick up the

1    parcel.

2            THE COURT:  Okay.

3            Ms. Botelho, did you understand everything that

4    Ms. Sameshima just stated?

10:22AM   5            THE DEFENDANT:  Yes, I do.

6            THE COURT:  Is everything she just stated true and

7    correct, to the best of your knowledge?

8            THE DEFENDANT:  Yes, it is.

9            THE COURT:  Okay.  Let me ask you a few questions

10:22AM  10    then.  Did you reach some agreement with Ms. Silveyra on or

11    about September 15th?

12            THE DEFENDANT:  Yes, I did.

13            THE COURT:  And what agreement did you have with her?

14            THE DEFENDANT:  Basically she was going to grab a

10:22AM  15    package.  She didn't get it -- or I don't know what had

16    happened because by the time she had called me, she gave me

17    some other story.  Obviously, it was a setup.  I thought

18    that -- what she had told me was that the DEA had came, had

19    looked into her box, and they had left.  And she didn't tell me

10:23AM  20    that I was getting taped on a phone and the DEA had her.  So,

21    that was basically what had happened.

22            THE COURT:  Okay.  Before that, before you knew the

23    DEA was involved in this thing and before that phone

24    conversation, had you asked Ms. Silveyra to pick something up?

10:23AM  25            THE DEFENDANT:  Yes, I did.

1          THE COURT:  What did you ask her to pick up?

2          THE DEFENDANT:  I asked her to pick up a box.

3          THE COURT:  Okay.  And what did you -- what did you

4   believe was in that box?

10:23AM    5          THE DEFENDANT:  To my knowledge, it was drugs.

6          THE COURT:  Methamphetamine?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  And you offered her a thousand

9   dollars for that?

10:23AM    10          THE DEFENDANT:  Yes, I did.

11          THE COURT:  Okay.  And your intent was for her to give

12   that box to you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And then what were you going to do with

10:23AM    15   the contents of the box?

16          THE DEFENDANT:  I was going to sell it.

17          THE COURT:  Okay.

18          Are you satisfied, Ms. Sameshima?

19          MS. SAMESHIMA:  Yes, Your Honor.

10:23AM    20          THE COURT:  Ms. Terada?

21          MS. TERADA:  Okay.

22          MS. SAMESHIMA:  Well, if we could just ask her if

23   she -- she doesn't dispute there were -- there was at least 500

24   grams of methamphetamine?

10:23AM    25          THE COURT:  Yeah, my understanding is through this

1    plea agreement you're under -- you're agreeing that --

2         THE DEFENDANT: It's 500 grams or more, correct.

3         THE COURT: Okay. All right. Ms. Botelho, as to

4    Count 1 of the indictment, how do you plead, guilty or not

10:24AM   5    guilty?

6         THE DEFENDANT: I plead guilty.

7         THE COURT: It is the finding of the Court that the

8    defendant is competent to understand the proceedings and to

9    enter a knowing and informed plea; that she understands the

10:24AM   10   charge to which she is pleading guilty; that the plea is not

11   the result of any force or threat; that the plea of guilty is

12   supported by an independent basis in fact containing each of

13   the essential elements of the offense; that she knows all of

14   her rights associated with a trial; and that she understands

0:24AM   15   the sentencing guidelines and the other factors the Court must

16   consider in imposing sentence, along with the maximum possible

17   punishment and the mandatory minimum.

18        As you have acknowledged that you are, in fact,

19   guilty, I accept your guilty plea; and you are now adjudged

10:24AM   20   guilty of that offense.

21        The Court at this time will file the plea agreement

22   but reserve a determination as to whether to accept the plea

23   agreement until after the presentence investigation report has

24   been completed.  I am referring you now to the U.S. Probation

10:24AM   25   Office for the preparation of that report.

1          Ms. Terada can explain to you that process and help

2     you get through that process.  I do urge you to cooperate, to

3     the extent you can, in the preparation of that report.

4          Can we get a sentencing date, please?

10:25AM  5          COURTROOM MANAGER:  Yes, Your Honor.  Monday,

6     March 6th, 2006 at 3:00 p.m.

7          THE COURT:  Okay.  Is there anything further?

8          MS. TERADA:  Nothing, Your Honor.

9          MS. SAMESHIMA:  No, Your Honor.  Current conditions to

10:25AM  10   remain?

11         THE COURT:  Yes.

12         MS. SAMESHIMA:  Thank you.

13         THE COURT:  Okay.  Thank you.  We're in recess.

14         (Proceedings concluded at 10:25 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2            I, Sharon Ross, Official Court Reporter, United

3    States District Court, District of Hawaii, do herby certify

4    that the foregoing is a correct transcript from the record of

5    proceedings in the above-entitled matter.

6            DATED at Honolulu, Hawaii, April 19, 2006.

7

8                              /s/Sharon Ross  *Sharon Ross*

9                              SHARON ROSS

10                             CSR 432, RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25